# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Pitchblack Oil, LLC, Dustin J. Stuber and Suzanne M. Young, Trustees of the Good Shepherds Royalty Trust, Douglas R. Hansen, and Lori A. Hansen,<br><br>              Plaintiffs,<br>vs.<br><br>Hess Bakken Investments II, LLC, Hess Corporation, Rocky R. Svihl, as Trustee of the RGKH Mineral & Royalty Trust dated November 1, 1995, and Whitetail Wave LLC,<br><br>              Defendants. | **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br><br><br>Case No. 1:16-cv-349 |

Before the Court are cross-motions for summary judgment. Pitchblack Oil, LLC ("Pitchblack") filed a complaint against Hess Bakken Investments II and Hess Corporation ("Hess") in North Dakota state court on September 8, 2016. See Docket Nos. 1-3 and 1-5. Hess filed a Notice of Removal based on diversity jurisdiction on September 30, 2016. See Docket No. 1. Pitchblack and Hess entered into a Stipulation to Amend Complaint to add additional parties on October 6, 2016. See Docket No. 8. The Plaintiffs filed an amended complaint on December 21, 2016. See Docket No. 17. Hess filed a counterclaim against the Plaintiffs and a crossclaim against Whitetail Wave LLC ("Whitetail"), and Rocky R. Svihl on January 12, 2017. See Docket No. 19. The Plaintiffs moved for summary judgment on April 19, 2017. See Docket No. 34. Whitetail filed a response supporting the Plaintiffs' summary judgment motion on May 15, 2017. See Docket No. 40. Hess filed a cross-motion for summary judgment on May 25, 2017. See Docket No. 41. The Plaintiffs filed a reply to Hess's summary judgment motion on June 15, 2017. See Docket No. 52. Whitetail filed a response in opposition to Hess's summary judgment motion

on June 29, 2017. See Docket No. 53. Hess filed a reply to the Plaintiffs' reply and Whitetails' response on July 13, 2017. See Docket No. 54. For the reasons set forth below, the Plaintiffs' summary judgment motion is denied and Hess's summary judgment motion is granted.

**I.    BACKGROUND**

Pitchblack is a North Dakota LLC. Dustin Stuber, a citizen of North Dakota, is Pitchblack's sole member. Hess is a Delaware corporation with its principal office in New York. Pitchblack brought suit against Hess in North Dakota state court, and Hess filed a notice of removal based on diversity jurisdiction. At the time the case was removed to this Court, complete diversity existed among the litigants. Pitchblack then amended its complaint to add additional parties. The amended complaint added the following plaintiffs: Dustin J. Stuber and Suzanne M. Young, both citizens of North Dakota; Douglas R. Hansen, a citizen of Arizona; and Lori A. Hansen, a citizen of Montana. It also added the following defendants: Rocky R. Svihl, a citizen of Arizona; and Whitetail Wave, LLC, a Montana LLC. Whitetail's sole member is Lonney H. White, Jr., a citizen of Montana. The amended complaint procedurally eliminated diversity of citizenship between the parties because it includes both plaintiffs and defendants from Montana and Arizona. Factually however, as discussed below, the interests of Defendants Svihl and Whitetail align with the Plaintiffs' interests. Collective references to "Plaintiffs" hereafter will include the procedural plaintiffs as well as Defendants Svihl and Whitetail.

The facts of the case are undisputed. Between October and December of 2005, Rocky Mountain Exploration, Inc. ("RME") acquired a number of oil and gas leases over lands in Dunn County, North Dakota. The pleadings and briefs set forth the details of these leases; the parties refer to them as the "Subject Leases." See Docket Nos. 17, 35, and 43-2. On May 15, 2006, RME

executed an Assignment of Overriding Royalty Interests ("the Assignment") assigning various overriding royalty interests[1] in the Subject Leases to the "Stuber Group." The Plaintiffs are members of the Stuber Group or successors in interest. See Docket No. 35, p. 2. The overriding royalty interests assigned to the Stuber Group ranged from 1.83% to 4.00%. The Assignment contained language stating it applied to the Subject Leases "or any extensions or renewals thereof entered into within 180 days of expiration of the applicable [Subject] Lease." See Docket No. 7-1, p. 1.

Third parties acquired various top leases[2] ("the Top Leases") over the Subject Leases. See Docket No. 17, pgs. 10-15. Most of these third parties had a leasehold interest in the Subject Leases when they acquired the Top Leases. See Docket No. 35, p. 11. The third parties generally held only a partial interest in the Subject Leases, but obtained a 100% interest in the corresponding Top Lease. See Docket No. 43-2, pgs. 11-22. Each Top Lease differed in some respect from its corresponding Subject Lease; all of the Top Leases contained royalty amounts and primary term lengths that differed from the Subject Leases, and each was acquired with new bonus consideration. See Docket No. 43-2, pgs. 11-22. Some of the tracts covered by the Subject Leases remain in production and continue to be burdened by the Subject Leases. The Subject Leases expired as to other tracts—the tracts at the heart of this dispute—and the Top Leases became effective. See Docket No. 43-2, p. 4. Through a series of conveyances and acquisitions, Hess

---

[1] An overriding royalty interest is an interest carved out of the working interest in an oil and gas lease; it is free of the expense of production. Renolds-Rexwinkle Oil, Inc. v. Petex, Inc., 1 P.3d 909, 845-846 (Kan. 2000). A working interest gives its owner the right to produce minerals from the land; it is burdened by the costs of production. Id.

[2] "A top lease is a lease granted by a landowner during the existence of a recorded mineral lease which is to become effective if and when the existing lease expires or is terminated." Valentina Williston, LLC v. Gadeco, LLC, 2016 ND 84, ¶ 3, 878 N.W.2d 397 (internal quotation omitted).

3

acquired nearly all of the working interests in both the Subject Leases and the Top Leases. See Docket No. 36, p. 5.

The Plaintiffs demand Hess acknowledge the overriding royalty interests assigned by BME to the Stuber Group. Hess recognizes the Plaintiffs have an interest in royalties from production on lands still held by the Subject Leases. See Docket No. 43-2, pgs. 2-3. But Hess disputes the Plaintiffs' assertion that the Stuber Group overriding royalty interests applies to the Top Leases. Pitchblack, Dustin J. Stuber, Suzanne M. Young, Douglas R. Hansen, and Lori A. Hansen (together "Pitchblack") filed a joint motion for summary judgment. Whitetail filed a brief in support of the joint motion. Hess then filed a counter-motion for summary judgment.

## III. LEGAL DISCUSSION

The parties disagree on whether the Top Leases are considered renewals or extensions of the Subject Leases. The Assignment states it applies to any "extensions" or "renewals" that are "entered into within 180 days of expiration of the applicable lease." If the Top Leases are renewals or extensions, they are burdened by the Stuber Group overriding royalty. If the Top Leases are not renewals or extensions, they are unburdened by the Stuber Group overriding royalty. The Court concludes the Top Leases are not renewals or extensions, but it first addresses the jurisdictional issue raised by the procedural background of the case.

### A. DIVERSTIY JURISDICTION

Jurisdiction exists under 29 U.S.C. § 1332(a)(1) when the amount-in-controversy exceeds $75,000 dollars and the parties are citizens of different states. In this case, the amount-in-controversy requirement is satisfied, but some plaintiffs and defendants are citizens of the same

4

state. However, it is not the case's caption that controls diversity determinations; the court is required to "look beyond the pleading and to arrange the parties according to their side of the dispute." City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69 (1941). This Court has had occasion to discuss *City of Indianapolis*, a seminal case on the issue:

> In *City of Indianapolis,* a New York bank was the trustee under a mortgage deed to secure bonds issued by a gas company. The bank filed suit in federal district court against the gas company and the City of Indianapolis, seeking a declaration that a lease was valid and binding on the gas company and the City of Indianapolis, and a judgment for overdue interest on the bonds. Only one issue remained in litigation, namely, whether the lease was valid and binding on the City of Indianapolis. Both the bank and the gas company asserted that the lease was valid and, therefore, they were "partners in litigation." Id. at 75. The Supreme Court specifically found that both the bank and the gas company desired the same outcome in litigation, for the lease to be upheld:
>
>> The property covered by the lease is now in the City's possession; [the bank] is simply acting to protect the bondholders' security. As to [the gas company], if the lease is upheld, it will continue to receive a six per cent return on its capital, and the burden of paying the interest on its bonded indebtedness will be not upon it but upon the City. What [the bank] wants [the gas company] wants and the City does not want. Yet the City and [the gas company] were made to have a common interest against [the bank] when, as a matter of fact, the interests of the City and of [the gas company] are opposed to one another. Therefore, if regard be had to the requirements of jurisdictional integrity, [the gas company] and [the bank] are on the same side of the controversy not only for their own purposes but also for purposes of diversity jurisdiction. But such realignment places Indiana 'citizens' on both sides of the litigation and precludes assumption of jurisdiction based upon diversity of citizenship. We are thus compelled to the conclusion that the District Court was without jurisdiction.
>
> Id. at 74–75. As a result, the Supreme Court realigned the gas company as a party plaintiff and the case was dismissed for lack of diversity jurisdiction.

5

EOG Res., Inc. v. Badlands Power Fuels, LLC, No. 4:8-cv-38, 2009 WL 424431 at *4-5 (D.N.D. Feb. 18, 2009) (alteration in original). See also S & W Mobile Home & RV Park, LLC v. B & D Excavating & Underground, LLC, No. 1:17-cv-9, 2017 WL 3129757 at *2 (D.N.D. July 21, 2017) (agreeing to realign parties); Zavanna, LLC v. RoDa Drilling Co., No. 4:09-cv-22, 2009 WL 3720177 at *7 (D.N.D. Nov. 3, 2009) (declining to realign parties).

The Supreme Court in *City of Indianapolis* explained "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants." 314 U.S. at 69. Rather, whether diversity exists must be ascertained from the "principal purpose of the suit" and the "primary and controlling matter in dispute." Id. These doctrines govern the alignment of the parties for purposes of determining diversity jurisdiction. Id. at 70. "The purpose in realigning parties is to make sure that there is a *bona fide* controversy between, as the statute commands, citizens of different states." Maryland Cas. Co. v. W.R. Grace & Co., 23 F.3d 617, 622 (2nd Cir. 1993). Neither party has briefed the jurisdictional issue raised by the procedural background of this case. Regardless, this Court has an obligation to consider its own jurisdiction, and it may raise the issue on its own when there is a jurisdictional question. See Thomas v. Basham, 931 F.2d 521, 523-524 (8th Cir. 1991).

Defendants Whitetail and Svihl are from the same states as Plaintiffs Lori Hansen and Douglas Hansen, respectively. However, like all of the Plaintiffs, Whitetail and Svihl are successors to the Stuber Group. See Docket No. 17, p. 9. Their interests thus align with the Plaintiffs' interests. See Docket No. 19, p. 5. A favorable ruling for the Plaintiffs would benefit Whitetail and Svihl in the same manner. Whitetail has accordingly filed a brief in support of the Plaintiffs' motion for summary judgment. See Docket No. 40. The record is not clear as to why Whitetail and Svihl did not join as plaintiffs and were sued as defendants. The Court must

nonetheless realign the parties, for purposes of determining diversity jurisdiction, according to their substantive interests. Upon realignment, the case presents a bona fide dispute between parties from diverse states. The Court consequently has jurisdiction to decide the matter. It turns now to the merits of the parties' cross-motions for summary judgment.

B.     **STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see also Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties." State Auto Ins. Co. v. Lawrence, 358 F.3d 982, 985 (8th Cir. 2004). Rather, an issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The moving party always bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party may not rely merely on allegations or denials; it must set out specific facts showing a genuine issue for trial. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The court must view the facts in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

## C. EXTENSION AND RENEWAL CLAUSES

The parties' disagreement focuses on the extension and renewal language contained in the Assignment. The Plaintiffs argue the Stuber Group overriding royalty interests burdens the Top Leases because they are either extensions or renewals of the Subject Leases. Hess argues the Top Leases are new and distinct leases unburdened by the Stuber Group overriding royalty.

Because an overriding royalty interest is an interest in the lease itself, it is generally limited by the duration of the lease that created it. Petex, Inc., 1 P.3d at 845-846; see also Campbell v. Nako Corp., 402 P.2d 771, 775 (Kan. 1965). When the instrument granting the overriding royalty interest contains an extension and renewal clause, the interest may burden subsequently acquired leases—i.e., leases that are extensions or renewals of the original lease. Avatar Exploration Inc. v. Chevron, USA, Inc., 933 F.2d 314, 319 (5th Cir. 1991). These clauses prevent the grantor from terminating the original lease and entering into a subsequent lease free of the burden of the overriding royalty the grantor conveyed. Id.; see also Petex, at 846. "The intentional termination of a lease to destroy a nonoperating interest is a washout tactic." Sawyer v. Guthrie, 215 F. Supp. 2d 1254, 1258 n.2 (D. Wyo. 2002) (citing 2 Howard R. Williams & Charles J. Meyers, OIL AND GAS LAW § 418 (1991)). Extension and renewal clauses serve to "prevent a 'washout' and to preserve, in any new lease, the same rights that would have been enjoyed in the existing lease. When such provision does appear, it may be necessary to determine if a new lease is in effect an extension or renewal of the old lease." Petex, at 917 (citing Kuntz, Oil and Gas § 63.2, p. 229-230 (1991)).

Jurisdictions differ on their interpretation and application of extension and renewal clauses. See generally Bruce A. Ney, Note, *Protecting Overriding Royalty Interests in Oil and Gas Leases: Are the Courts Moving to Washout Extension or Renewal Clauses*, 31 WASHBURN L.J. 544, 563

(1992). Some jurisdictions have read an implied duty of good faith and fair dealing into overriding royalty grants and have held the interest burdens a new lease when there is evidence of bad faith. See e.g. Indep. Gas & Oil Producers, Inc. v. Union Oil Co., 669 F.2d 624, 627 (10th Cir. 1982) ("The fiduciary obligations impliedly created by the terms of such a lease assignment form the basis for the rule); Campbell v. Nako Corp., 402 P.2d 771, 777 (Kan. 1965) ("there seems clearly emerging a duty of fair dealing required on the part of the lessee . . . to which doctrine this court has definitely inclined); Probst v. Hughes, 286 P. 875, 879 (Okla. 1930) (assignee of lease occupies the position of trustee and owes the utmost good faith to overriding royalty interest holder). At least one court has held an overriding royalty interest burdens a new lease when the parties share a special relationship giving rise to fiduciary duties. See Howell v. Coop. Refinery Ass'n., 271 P.2d 271, 274-275 (Kan. 1954) (existence of joint venture created fiduciary duties between assignee and assignor).

Other jurisdictions have declined to read implied duties into extension and renewal provisions. See e.g. Sawyer, 215 F. Supp. 2d at 1263 (finding a heightened or fiduciary duty would exert unreasonable constraint on oil and gas industry); Exp. Co. v. Vega Oil & Gas Co., 843 S.W.2d 123, 126 (Tex. App. 1995) ("The mere assignment of an oil and gas lease reserving an overriding royalty interest does not in itself create a confidential or fiduciary relationship between the assignor and assignee."); Sunac Petroleum Corp. v. Parkes, 416 S.W.2d 798, 805 (Tex. 1967) ("we see no basis for a holding that there existed a confidential or fiduciary relationship").

### D. WHETHER THE TOP LEASES CONSTITUTE "RENEWALS" OR "EXTENSIONS"

This case presents no allegation of a special relationship between the parties or of bad faith on Hess's part. The parties' disagreement focuses on the effect of the words "extension" and

9

"renewal" as used in the Assignment. The Plaintiffs contend the Top Leases are simply continuances of the original Subject Leases, and consequently their overriding royalty interests still burden Hess's working interests. Hess points to the varying terms and differences in the Top Leases and asserts they are new and distinct leases unburdened by the Stuber Group overriding royalty.

A federal court sitting in diversity applies the substantive law of the forum state. Chew v. American Greetings Corp., 754 F.3d 632, 635 (8th Cir. 2014). See also Hammonds v. Hartford Fire Ins. Co., 501 F.3d 991, 996 n.6 (8th Cir. 2007). Under North Dakota law, assignments are interpreted in the same manner as contracts. Hallin v. Inland Oil & Gas Corp., 2017 ND 254, ¶ 8, 903 N.W.2d 61.

> The primary purpose in interpreting contracts, deeds, and leases is to ascertain and effectuate the parties' or grantor's intent.
>
> The parties' intent is ascertained from the writing alone if possible. . . . When the parties' intent can be determined from the contract language alone, interpretation of a contract presents a question of law. When an agreement has been memorialized in a clear and unambiguous writing, extrinsic evidence should not be considered to ascertain intent. . . . If a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the contract terms and parties' intent become questions of fact.

Id. at ¶¶ 8-9 (internal quotation and citation omitted). Ambiguity exists in a contract when it can be construed as having at least two alternative meanings. Kief Farmers Coop. v. Farmland Mut. Ins. Co., 534 N.W.2d 28, 32 (N.D. 1995). Whether a contract is ambiguous is a question of law for the court to decide. Ogren v. Sandaker, 2017 ND 105, ¶ 8, 839 N.W.2d 750.

Neither party claims the Assignment is ambiguous. The dispute focuses on whether RME and the Stuber Group—the parties to the Assignment—intended for the overriding royalty to burden the Top Leases at issue. The answer to that question hinges on the Court's analysis of the Top Leases—i.e., its determination of whether they are extensions or renewals of the Subject

Leases. The application of these terms can be undertaken as a matter of law, as the parties urge, because they are clear and unambiguous as used in the Assignment.

Contrary to Pitchblack's assertion, North Dakota has no precedent controlling this issue. Pitchblack claims North Dakota has adopted a rule that all top leases acquired by a current lessee constitute extensions of the original lease. Pitchblack cites Sandvick v. LaCrosse, 2008 ND 77, 747 N.W.2d 519, a case where the North Dakota Supreme Court stated a top lease was "effectively" an extension of an original lease. Id. at ¶ 18. The court held the defendants breached fiduciary duties that were created by the existence of a joint venture to obtain and sell oil and gas leases. Id. at ¶ 19. The parties purchased oil and gas leases with the intent to resell them. Id. at ¶ 17. The defendants subsequently acquired top leases without the plaintiffs' knowledge. Id. at ¶ 4. The court concluded the defendants' conduct—purchasing the top leases without offering an opportunity for the plaintiffs to join in the acquisition—constituted a breach of the fiduciary duty of loyalty created by the joint venture. Id. at ¶ 19. In dicta, the court noted that the top leases were identical and effectively extensions of the original leases; it provided the following authority:

> See Reynolds-Rexwinkle Oil, Inc. v. Petex, Inc., 268 Kan. 840, 1 P.3d 909, 920-921 (2000) (holding a substantially identical top lease taken while the initial lease was still in effect to be an extension and renewal of the initial lease); 5 Eugene Kuntz, *Oil and Gas* § 63.2, at 230 (1991) ("It has been held that a new lease acquired from the lessor by the lessee while the old lease is in effect . . . is an extension of the lease . . . .")

Sandvick, at ¶ 18 (alteration in original).

Pitchblack suggests *Sandvick* stands for the proposition that, under North Dakota law, when a current lessee purchases a top lease, the new lease is considered an extension or renewal of the bottom lease as a matter of law. See Docket No. 35, p. 10. The issue confronting the North Dakota Supreme Court was whether the parties' relationship gave rise to heightened duties, and if so, whether the defendants breached those duties. Sandvick, at ¶ 1. There was no overriding

11

royalty interest in question, and the court expressly noted there was no extension or renewal clause at issue. Id. at ¶ 18. The Court declines Pitchblack's invitation to infer a dispositive rule of law from dicta in an inapposite case.

The Court will interpret the unambiguous language in the Assignment as a North Dakota court would—ascertaining the parties' intent from the meaning of the words used. The Assignment grants an overriding royalty interest in the Subject Leases "or any extensions or renewals thereof entered into within 180 days of expiration of the applicable lease." The Assignment's purpose was to effect a legal conveyance. It uses terms like "consideration," "grant," and "assignee." The Court determines these terms, as well as the other terms in the Assignment, were meant to be read in their legal sense. "Extension" and "renewal" have legal definitions that differ somewhat from their common usage. Extension is defined as "[t]he continuation of the same contract for a specified period." *Extension*, Black's Law Dictionary (10th ed. 2014). Renewal is defined as "[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." *Renewal*, Black's Law Dictionary (10th ed. 2014).

The concept of difference is at the heart of these terms. Each term—"extension" and "renewal"—delineates a different degree of difference from the original. An extended lease is not a different lease at all; it is simply a lease that has been prolonged for some amount of time. A renewed lease is not the same lease as the original, but it is sufficiently similar to be considered a replacement or recreation of it. Courts have frequently commented on this distinction: "Renewal and extension are concepts closely allied to one another, normally involving continuation of the relationship on essentially the same terms and conditions as the original contract." Williams Petroleum Co. v. Midland Coop. Inc., 679 F.2d 815, 817 (10th Cir. 1982) (citing Seymour v.

Coughlin Co., 609 F.2d 346, 350-51 (9th Cir. 1979); East Bay Union of Machinists v. Fibreboard Paper Prods. Corp., 285 F. Supp. 282, 287 (N.D.Cal.1968); Sunac Petroleum Corp. v. Parkes, 416 S.W.2d 798, 802-03 (Tex. 1967); Mutual Paper Co. v. Hoague-Sprague Corp., 8 N.E.2d 802, 806 (Mass. 1937)).

The Top Leases here differ in many respects from the Subject Leases. Among other divergent provisions, each Top Lease contains differing primary terms and differing royalty amounts. The Top Leases were acquired for additional bonus consideration. The Top Leases also create different legal relationships. Most of the Top Leases give the lessee a greater leasehold interest than the lessee had under the corresponding Subject Lease. Aside from covering the same tracts as the Subject Leases, the Top Leases lack significant similarity. The Court finds, as a matter of law, that none of the Top Leases constitute an extension or renewal of the Subject Leases as those terms are used in the Assignment. Therefore, the Court concludes the Stuber Group overriding royalty does not burden the Top Leases.

## IV.　CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, the Plaintiffs' Motion for Summary Judgment (Docket No. 34) is **DENIED**. The Defendant's Motion for Summary Judgment (Docket No. 41) is **GRANTED**.

**IT IS SO ORDERED**

Dated this 7th day of March, 2018.

/s/ Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court